UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE WILKERSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOUGLAS COLLINS, as Secretary, )<br>U.S. Department of Veterans Affairs, )<br>)<br>Defendant. ) | No. 1:21-CV-05255<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Jacqueline Wilkerson worked as an alternative dispute resolution specialist at the Department of Veterans Affairs (commonly called the VA) until she was fired in July 2020. R. 40, DSOF ¶¶ 5, 53; R. 13, Answer ¶¶ 8, 35.[1] According to Wilkerson's supervisors, she was fired because she consistently failed to meet the productivity expectations for her role and failed to respond to her supervisors' communications and requests on time. DSOF ¶¶ 49–50; R. 40, Def.'s Exh. N, Proposed Removal Letter. But Wilkerson, an African American woman, contends that her termination and the negative treatment that she allegedly faced at work were due to race- and sex-based discrimination. R. 1, Compl. at 5–6. She also claims that her supervisors retaliated against her for filing grievances against them. *Id.* at 7.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. The current Secretary of the VA has been substituted as the named defendant for the prior officeholder. Fed. R. Civ. P. 25(d).

So Wilkerson appealed the termination to the Merit Systems Protection Board and lodged an Equal Employment Opportunity complaint with the VA's equal employment office. R. 40, Def.'s Exh. R, EEO Decision Letter; R. 40, Def.'s Exh. P, Merit Systems Appeal Form. After those efforts were unsuccessful, she sued the VA.[2] *See* Compl. Wilkerson brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the VA discriminated against her based on her sex and race and retaliated against her for engaging in protected activity. *Id.* at 5–8. The VA now moves for summary judgment, arguing that Wilkerson failed to exhaust administrative remedies and that she does not present enough evidence that the agency discriminated or retaliated against her. R. 38, Mot.; R. 39, Def.'s Br. at 1. Though its exhaustion argument is unsuccessful, the VA is right that the evidence proffered by Wilkerson, even when viewed in her favor, fails to adequately support her claims. The motion for summary judgment is thus granted.

## I. Background

Jacqueline Wilkerson, an African American woman, began working for the Department of Veterans Affairs in 1993. Answer ¶ 8. She rose through the ranks at the VA and in 2016 became an alternative dispute resolution specialist in the Midwest District's Office of Resolution Management. *Id.* In that role, Wilkerson's main responsibility was to conduct mediations between parties who were having disputes. DSOF ¶ 6; R. 40, Def.'s Exh. A, Press Dep. at 21:4–9.

---

[2]The Court has federal-question jurisdiction under 28 U.S.C. § 1331.

At the end of 2018, Wilkerson's second-level supervisor, Glenn Sebesta, gave her a year-end performance evaluation rating of "Fully Successful." DSOF ¶ 12; R. 40, Def.'s Exh. E, Informal Grievance. Wilkerson then asked Sebesta to reconsider that rating and to improve it to "Exceptional." R. 40, Informal Grievance. Sebesta responded by expressing his concern to Wilkerson that she had not completed enough mediations over the course of the year, conducting fewer than half of the 12 mediations per month that was expected for specialists. *Id.* at VA 2179. During the next year (in 2019), Wilkerson's direct supervisor, Curtis Smith, re-emphasized to her the importance of meeting the target of 12 mediations per month. DSOF ¶ 20; R. 40, Def.'s Exh. C, Smith Dep. at 65:22–66:8. But by the end of 2019, Wilkerson had completed only 62 of the expected 144 mediations, averaging just over five per month. R. 40, Def.'s Exh. F, Performance Appraisal 1 at 01407. So again, she received a "Fully Successful" performance rating, rather than "Exceptional." *Id.*

In early 2020, concerned by Wilkerson's sustained productivity shortfalls, Sebesta and Smith began taking steps to try to help her complete more mediations. Smith reached out to Wilkerson's co-worker to brainstorm ways to help Wilkerson reach the mediation target. R. 40, Smith Dep. at 73:5–77:2. Following this conversation, Sebesta and Smith instructed Wilkerson to switch from a compressed-work schedule (four, ten-hour workdays per week) to a regular schedule (five, eight-hour workdays per week) and to limit her work travel to local trips. R. 40, Def.'s Exh. G, Jan. 24, 2020, Smith Email; R. 40, Def.'s Exh. B, Sebesta Dep. at 56:3–17. They also

3

told Wilkerson that she did not need to conduct any more trainings for the rest of the year. *Id.*

Soon after getting these instructions, Wilkerson filed an informal grievance against Smith, alleging that Smith raised his voice and was confrontational with her, that Smith's discussion of Wilkerson's performance with her coworker was a breach of confidentiality, and that the productivity expectations were unrealistic. R. 40, Def.'s Exh. D, Wilkerson Dep. at 36:16–37:14; R. 40, Def.'s Exh. H, Informal Grievance Decision. Smith responded to and denied these allegations. *Id.* Then, in Wilkerson's 2020 mid-year evaluation, Smith rated her performance as "Needs Improvement," explaining that she had completed only 56 of the expected 72 mediations for the six-month period. R. 40, Def.'s Exh. M, Performance Appraisal 2 at 00067–69. Smith also stated that he had "experience[ed] blatant disrespectful and unprofessional behavior by" Wilkerson. *Id.* at 00070.

Ultimately, on June 29, 2020, Sebesta proposed removing Wilkerson from federal service. DSOF ¶ 49; R. 40, Def.'s Exh. N, Proposed Removal Letter. The stated rationale for the removal was that Wilkerson failed to complete the required number of mediations per month despite being informed about this deficiency, did not close out enough of the cases assigned to her, and failed to respond to requests and communications from her supervisors in a timely fashion. *Id.*. On July 21, 2020, the director of the VA's Western Region officially issued a decision to remove Wilkerson from VA employment, finding that the reasons provided in Sebesta's letter of

4

proposed removal were "supported by substantial evidence." R. 40, Def.'s Exh. O, Final Removal Letter.

Before her removal, on March 11, 2020, Wilkerson informally contacted the VA's Office of Employment Discrimination Complaint Adjudication (EEO) and told the Office that she was facing discrimination and retaliation at work. R. 48, PSOF ¶ 25; R. 48-9, Pl.'s Exh. 9, EEO Counselor Report. On May 29, 2020, Wilkerson then filed a formal EEO complaint with the Office, alleging that she faced workplace discrimination based on her sex and race and that she faced retaliation for filing a grievance against Smith. DSOF ¶ 76; R. 40, EEO Decision Letter. On July 24, 2020, Wilkerson amended that complaint to assert that her removal was also discriminatory and retaliatory. PSOF ¶ 36; R. 48-16, Pl.'s Exh. 16, EEO Amendment. The Office rejected Wilkerson's workplace discrimination claim but did not reach a final decision on her removal claim. R. 40, EEO Decision Letter at 1–10. Separately, on August 6, 2020, Wilkerson appealed her termination decision to the Merit Systems Protection Board. R. 40, Merit Systems Appeal Form. The Board rejected that appeal as untimely because Wilkerson filed it more than 10 business days after her removal. R. 40, Def.'s Exh. Q, Merit System Initial Decision at 2–3.

Finally, Wilkerson brought this lawsuit. *See* Compl. She claims that the VA violated Title VII of the Civil Rights Act of 1964 by discriminating against her based on her sex and race and by retaliating against her for engaging in protected activity, leading to her removal. *Id.* The VA now moves for summary judgment, arguing that

5

Wilkerson failed to exhaust administrative remedies for the removal claim and that she has no evidence that the agency unlawfully discriminated or retaliated against her. Mot. at 1.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

III. Analysis

A. Exhaustion

The VA begins by arguing that it is entitled to summary judgment on Wilkerson's removal claim because she failed to exhaust her administrative remedies on that claim before filing this suit. Def.'s Br. at 6. That is incorrect. Wilkerson notes that under 29 C.F.R. § 1614.407, she was authorized to file her discrimination and retaliation claims with the Court "[a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken." R. 47, Pl.'s Resp. Br. at 5 (citing 24 C.F.R. § 1614.407(b)). She has complied with that timeline.

To start, Wilkerson filed an EEO complaint with the Office of Employment Discrimination Complaint Adjudication on May 29, 2020, and then amended it on July 24, 2020, to include allegations that her removal was the product of race and sex-based discrimination and retaliation. R. 40, EEO Decision Letter; R. 48-16, EEO Amendment. In its Final Agency Decision, issued on July 6, 2021, the Office concluded that Wilkerson failed to prove that she was subjected to discrimination or retaliation *while working* at the VA. R. 40, EEO Decision Letter at 1–10. But the decision expressly declined to reach a decision on Wilkerson's claim that her *removal* was the product of discrimination and retaliation. *Id.* at 2, n.1. Because a petition for review of Wilkerson's removal claim was still pending before the Merit Systems Protection Board, the Office explained that it would hold the removal claim in her Equal Employment Opportunity complaint "in abeyance … until such time as the MSPB

7

issues a decision on the petition for review and [Wilkerson] affirmatively notifies th[e] office to proceed with the processing of her claim." *Id.* That time never came, so the Office never issued a final decision on Wilkerson's removal claim. And because no agency final action was taken on that claim, Wilkerson was authorized to file this suit so long as she waited at least 180 days after she amended her complaint with the Office to include the removal claim. 24 C.F.R. § 1614.407(b). That amendment occurred on July 24, 2020, and Wilkerson filed her suit with the Court on October 4, 2021—far after than the minimum wait-time of 180 days. R. 48-16, EEO Amendment; Compl.

The VA does not dispute that the Office never reached a final decision on Wilkerson's removal claim. Def.'s Br. at 7–8. Instead, it notes that the Merit Systems Protection Board's final decision stated that Wilkerson was required to either file a civil action in district court or request review by the Equal Employment Opportunity Commission *within 30 days* of receiving the Board's decision. *Id.* at 7. Wilkerson did neither. So the VA argues that she failed to exhaust her administrative remedies on the removal claim. *Id.* at 6. But the VA offers no statutory or regulatory support for its argument; instead, it relies only on the Board's letter to Wilkerson. *Id.* at 6–8. Plus, the VA neglects to explain why the regulation that Wilkerson cites—29 C.F.R. § 1614.407—does not apply here or how the Board's letter could override that regulation. R. 49, Def.'s Reply Br. at 6–9. Because administrative exhaustion is an

8

affirmative defense, the VA has the burden of proving it. Given the shortfalls in the VA's arguments and support, its administrative exhaustion argument fails.

It is worth noting that there *is* a good argument that Wilkerson failed to exhaust her removal claim. But the VA did not properly make this argument and instead forfeited it. When laying out Wilkerson's options and 30-day timeline for review, the Board cited 5 U.S.C. § 7703(b)(2). R. 40, Def.'s Exh. T, Merit System Withdrawal Order at VA 1999. That statute provides that if an individual wants judicial review of a discrimination claim that has been decided by the Board, "[n]otwithstanding any other provision of law," she must file that case "within 30 days after the date … [she] received notice of the judicially reviewable action." 5 U.S.C. § 7703(b)(2). This language suggests that § 7703(b)(2)'s 30-day timeline for filing a discrimination suit overrides other statutes and regulations, including 29 C.F.R. § 1614.407 and its 180-day timeline. A reasonable interpretation of how these two timelines interact is as follows: Once an individual gets a Board decision, she has 30 days to file for review with either the Equal Employment Opportunity Commission or a district court. If she successfully files with the Commission within that time period, then that is when 29 C.F.R. § 1614.407's timeline kicks in. So if the Commission then fails to provide a final decision on the claim within 180 days, the individual may file suit in district court. *See Punch v. Bridenstine*, 945 F.3d 322, 326–27 (5th Cir. 2019).

Wilkerson did not follow those steps. Rather than filing her EEO complaint within 30 days of getting the Board decision, she filed it *before* she filed with the

9

Board. R. 40, EEO Decision Letter; R. 40, Merit Systems Appeal Form. That is why the Office held her removal claim in abeyance. So it was then up to Wilkerson to notify the Office about the Board's final decision within 30 days of receiving that decision. That notification would in turn start the 180-day period. But she never took that step, so the 180-day clock never started and never expired. On that approach, Wilkerson did not file this suit at the right time and did not exhaust her administrative remedies on the removal claim.

That said, the VA did not bring any of this nuance to light. It failed to cite any statutory or regulatory support for its exhaustion arguments and of course failed to explain how 5 U.S.C. § 7703(b)(2) and 29 C.F.R. § 1614.407 interact. *See* Def.'s Br. at 6–8; Def.'s Reply Br. at 6–9. It is not the Court's role to fill in these gaps. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386–87 (7th Cir. 2012) (finding forfeiture where party "fail[ed] to advance a specific point in support of a general argument"). So these exhaustion arguments are deemed forfeited, and for the purposes of this suit, the Court considers Wilkerson's removal claim properly exhausted. *Id.*

### B. Discrimination

Before getting into the merits of Wilkerson's claims, there is a preliminary question on the admissibility of the declarations that Wilkerson submitted from herself, Mechell Reed, and Lelar Taylor. The VA argues that these declarations must be excluded because they were not signed "under penalty of perjury." Def.'s Reply Br. at 1–2. That is correct—and this inexplicable gap dooms Wilkerson's claims.

To be considered as evidence at summary judgment, unsworn declarations must be signed under penalty of perjury, giving them the legal effect of affidavits. *McDaniel v. Syed*, 115 F.4th 805, 813–14 (7th Cir. 2024); *King v. Schieferdecker*, 498 Fed. Appx. 576, 579 (7th Cir. 2012); *see also* 28 U.S.C. § 1746. If a declaration does not state that it was made under penalty of perjury, then it must instead be sworn, signed, and notarized. *King,* 498 Fed. Appx. at 579. Here, all of Wilkerson's declarations are unsworn, are not notarized, and do not say that they were signed under penalty of perjury. R. 48-1, Pl.'s Exh. 1, Wilkerson Decl.; R. 48-2, Pl.'s Exh. 2, Reed Decl.; R. 48-3, Pl.'s Exh. 3, Taylor Decl. Instead, the declarations merely include digital signatures and begin by stating that the declarant has "personal knowledge of the facts set forth below," "is "competent to testify," and "if called to testify" would state those facts. R. 48-1, Wilkerson Decl.; R. 48-1, Reed Decl.; R. 48-3, Taylor Decl.. None of those statements amount to an under-oath affirmation or an under-penalty-of-perjury execution. Plus, even though the VA clearly alerted Wilkerson to this issue by raising it in its reply brief, Wilkerson has not filed any motion to try to rectify the problem. So unfortunately, the Court cannot consider the contents of those three proffered declarations in deciding the summary judgment motion. And after excluding these declarations, Wilkerson is left with very little evidence to support her discrimination and retaliation claims.

Moving on to the merit of Wilkerson's discrimination claims, the VA argues that she fails to provide sufficient evidence that she suffered race- or sex-based

11

discrimination. Def.'s Br. at 8. A plaintiff may prove a Title VII discrimination claim "either directly or indirectly, and with a combination of direct and circumstantial evidence." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017). Rather than rely on a prima facie framework (discussed later on), this way of proving a Title VII claim "requires the plaintiff to set forth sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Id.* (cleaned up).[3] The bottom line is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race ... caused the discharge." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Here, Wilkerson's claims fail to proffer that kind of evidence. With the disqualification of the proffered declarations, she provides no direct or circumstantial evidence that her poor performance reviews, removal, and other alleged adverse actions were motivated by her supervisors' discriminatory animus.

And Wilkerson does not fare much better under the long-standing *McDonnell Douglas* framework. This method of proof "allows a plaintiff to prove discrimination by using the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)." *McKinney*, 855 F.3d at 807. Under this framework, Wilkerson first has the burden to make a prima facie case of discrimination. To do so, she must offer enough evidence to show that: (1) she belongs to a protected class; (2)

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from her employer. *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021).

Wilkerson fails on the second and fourth requirements. First, no reasonable jury could find that she met the VA's legitimate performance expectations. Sebesta and Smith have both explained that alternative dispute resolution specialists at the VA were expected to conduct 12 mediations per month, a target that was reasonable to meet. DSOF ¶¶ 19, 20; R. 40, Smith Dep. at 64:1–65:2, 65:22–66:8. But Wilkerson fell substantially short of that target for three years in a row, despite being repeatedly reminded of its importance. R. 40, Informal Grievance at VA 2179; R. 40, Smith Dep. at 65:22–66:20. In 2018 and 2019, Wilkerson averaged only five mediations per month, and though her productivity increased in 2020, she still averaged just nine mediations per month that year. R. 40, Performance Appraisal 2 at 00067–69. So even when the record evidence is viewed in her favor, she consistently underperformed in her role.

Next, Wilkerson also fails to show that other similarly situated employees outside of her protected classes were treated better than she was. She identifies Tyrone Wilkes, a male alternative dispute resolution specialist, and argues that he also failed to complete 12 mediations per month and was not terminated as a result. Pl.'s Resp. Br. at 7. But Wilkerson offers no admissible evidence to show that Wilkes had the

13

same or similar productivity shortfalls as her and that Wilkes was not disciplined due to those shortfalls. Instead, Wilkerson relies heavily on the inadmissible declarations to support her argument. *See* PSOF ¶¶ 13–14. She also identifies Shawn McConnell— a white, male employee under Sebesta's supervision—and contends that he was not terminated despite having performance and conduct issues. Pl.'s Resp. Br. at 11–12. But again, the admissible evidence does not show that McConnell had performance and conduct issues that were similar to Wilkerson's and that he faced no discipline for those issues. In fact, Wilkerson herself admitted that she did not know if McConnell received any discipline for his alleged infractions. R. 40, Wilkerson Dep. at 40:13–15. For whatever reason, Wilkerson did not uncover crucial facts about the proposed comparators during discovery (or at the least, she has not offered admissible evidence of those facts). In sum, Wilkerson does not establish that similarly situated employees received better treatment than she did. So she cannot put forth a prima facie case of discrimination. The VA is entitled to summary judgment on Wilkerson's discrimination claim.

It is worth noting that even if Wilkerson were able to establish a prima facie case, thereby shifting the burden to the VA, the VA successfully provided legitimate, nondiscriminatory reasons for removing Wilkerson—and no reasonable jury could find otherwise. Sebesta's stated reasons for removing Wilkerson were that she repeatedly failed to meet the expected mediation target despite being told about the productivity shortfalls, failed to close out enough of the cases assigned her, and failed

14

to respond to her supervisors' requests and communications in a timely manner. R. 40, Proposed Removal Letter.

All of these reasons are nondiscriminatory and are supported by the record. First, as noted above, Wilkerson fell short of completing 12 mediations per month in 2018, 2019, and 2020. R. 40, Informal Grievance at VA 2179; R. 40, Performance Appraisal 1 at 01407; R. 40, Performance Appraisal 2 at 00067–69. Second, Wilkerson was required to close 95% of the mediation cases that were assigned to her within 90 days of initial contact with the parties. R. 40, Performance Appraisal 1 at 01405. But she closed out only 84% of her cases within that allotted time frame. R. 40, Proposed Removal Letter at 1. Third, among other incidents, Wilkerson ignored Smith's repeated requests for documentation regarding Wilkerson's availability to conduct mediations, finally responding to these requests after four weeks had passed and after Smith had to remind her twice for a response. *Id.* at 2.

Wilkerson provides no admissible evidence that disputes or contradicts these facts, even when the record is viewed in her favor. Instead, she argues that these reasons for removal were pretextual because other similarly situated employees committed the same offenses and were not punished for them. Pl.'s Resp. Br. at 8–12. But as explained earlier, Wilkerson fails to support this argument with *admissible* evidence that others—like Wilkes and McConnell—had similar issues with productivity and responsiveness and were not disciplined. So her pretext arguments are

15

unsuccessful, and summary judgment is granted to the VA on Wilkerson's discrimination claim.

### C. Retaliation

The VA also argues that it is entitled to summary judgment on Wilkerson's retaliation claim because she cannot show a causal link between her protected activity and the adverse action she suffered. Def.'s Br. at 13. That argument succeeds as well. To survive summary judgment on a retaliation claim, a plaintiff must provide sufficient evidence that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was motivated by the protected activity. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Ultimately, the plaintiff must show that her protected activity was the but-for cause of the adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). But the Supreme Court has long made clear that the standard for an adverse employment action is less demanding for retaliation claims than for substantive discrimination claims under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Under the retaliation standard, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (cleaned up).

Though Wilkerson did engage in a protected activity and did suffer an adverse employment action, no reasonable factfinder could find a causal link between the two,

16

even viewing the evidence in her favor. Wilkerson identifies her March 11, 2020, informal EEO complaint as her protected activity and identifies her termination on July 21, 2020, as the materially adverse employment action that she suffered. Pl.'s Resp. Br. at 12. But she provides no evidence showing that filing the informal complaint was the but-for cause of her being terminated from the VA. *Id.* at 12–13. Instead, Wilkerson relies almost solely on the *timing* of her removal relative to her filing the informal complaint. She notes that Sebesta learned of Wilkerson's informal complaint on April 7. *Id.* at 12. Wilkerson also points out that Sebesta testified that he began the process of removing Wilkerson sometime after her April 6, 2020, mid-year evaluation. *Id.* at 12–13. So, according to Wilkerson, the fact that Sebesta began working on removing her sometime around the same time as he learned about her informal complaint constitutes "suspicious timing" and demonstrates that he was retaliating against her. *Id.* at 13.

But the timeline is not suspicious. The fact that Sebesta began working on removing Wilkerson after her final, poor performance review on April 6, 2020, aligns with the VA's stated, nondiscriminatory rationale for removal: Wilkerson's low productivity. *See* R. 40, Proposed Removal Letter. And because Wilkerson's performance evaluation predates Sebesta learning of Wilkerson's complaint, R. 40, Sebesta Dep. at 80–86,the evidence shows that Sebesta arrived at the conclusions on poor performance *before* he knew about her complaint. So Wilkerson's timing evidence is not enough to create a genuine factual issue on whether her removal was motivated

17

by her filing an informal complaint. That is especially true given "that suspicious timing will rarely be sufficient in and of itself to create triable issue." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (cleaned up). Give the record evidence in this case, no reasonable jury could draw the causal bridge the complaint and the firing. The VA thus also prevails on Wilkerson's retaliation claim, and its motion for summary judgment is granted.

### IV. Conclusion

The VA's motion for summary judgment, R. 38, is granted, and the case is dismissed with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 18, 2025