**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE WILKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-05255 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DOUGLAS COLLINS, as Secretary, | ) | |
| U.S. Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jacqueline Wilkerson was fired in July 2020 from her role as an alternative dispute resolution specialist at the Department of Veterans Affairs (commonly called the VA). R. 40, DSOF ¶¶ 5, 53; R. 13, Answer ¶¶ 8, 35.[1] So she sued the VA, claiming that it violated Title VII of the Civil Rights Act of 1964 by discriminating against Wilkerson based on her sex and race and by retaliating against her for engaging in protected activity. R. 1, Compl. The VA then moved for summary judgment, arguing that Wilkerson failed to exhaust her administrative remedies and that she presented no evidence that the agency unlawfully discriminated or retaliated against her. R. 38, MSJ.

The Court granted the VA's motion. R. 62, MSJ Op. at 2. It concluded that although Wilkerson had exhausted her administrative remedies, she failed to present

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. The current Secretary of the VA has been substituted as the named defendant for the prior officeholder. Fed. R. Civ. P. 25(d).

evidence that adequately supported her claims. *Id*. Wilkerson now moves for reconsideration, arguing that the Court made manifest errors of fact in granting summary judgment to the VA. R. 64, Pl.'s Mot. For the reasons explained in this Opinion, the motion for reconsideration is denied.

## I. Background

Jacqueline Wilkerson worked as an alternative dispute resolution specialist at the VA until she was fired in July 2020. DSOF ¶¶ 5, 53; Answer ¶¶ 8, 35. According to Wilkerson's supervisors, she was fired because she consistently failed to meet the productivity expectations for her role and failed to respond on time to her supervisors' communications and requests. DSOF ¶¶ 49–50; R. 40, Def.'s Exh. N, Proposed Removal Letter. But Wilkerson, an African American woman, contends that her termination and the negative treatment that she allegedly faced at work were due to race- and sex-based discrimination. Compl. at 5–6. She also claims that her supervisors retaliated against her for filing grievances against them. *Id*. at 7.

So Wilkerson appealed the termination to the Merit Systems Protection Board and lodged an Equal Employment Opportunity complaint with the VA's equal employment office. R 40, Def.'s Exh. R, EEO Decision Letter; R. 40, Def.'s Exh. P, Merit Systems Appeal Form. After those efforts were unsuccessful, she sued the VA. *See* Compl. Wilkerson brings claims under Title VII of the Civil Rights Act of 1964, 42

2

U.S.C. § 2000e *et seq.*, alleging that the VA discriminated against her based on her sex and race and retaliated against her for engaging in protected activity. *Id.* at 5–8.[2]

The VA then moved for summary judgment, arguing that Wilkerson failed to exhaust her administrative remedies and that she did not present enough evidence that the agency discriminated or retaliated against her. *See* MSJ; R. 39, Def.'s MSJ Br. at 1. The Court granted that motion, concluding that although Wilkerson did exhaust her administrative remedies, the VA was right that the evidence proffered by Wilkerson, even when viewed in her favor, fails to adequately support her claims. MSJ Op. at 2. Wilkerson now moves for reconsideration of the grant of summary judgment, asserting that the prior decision contained manifest errors of fact. Pl.'s Mot.

## II. Legal Standard

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning

---

[2]The Court has federal question jurisdiction under 28 U.S.C. § 1331.

but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up).[3] But a motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

### III. Analysis

### A. Job Performance

Wilkerson begins by arguing that she did not have any issues with her job performance before she was fired. Pl.'s Mot. at 3–4. In support, she notes that she received work evaluations of "Fully Successful" in 2018 and 2019, indicating that she met all of her job expectations. *Id.* at 3. But the Court already considered and rejected this argument. The summary judgment opinion explained that—even when the evidence was viewed in her favor—in the three years before she was terminated from the job, Wilkerson "fell substantially short" of conducting 12 mediations per month, which was the number she was expected to hit. MSJ Op. at 13. Specifically, the Court pointed out that "[i]n 2018 and 2019, Wilkerson averaged only five mediations per month, and though her productivity increased in 2020, she still averaged just nine mediations per month that year." *Id.* So Wilkerson did not come close to meeting the productivity expectations for her role.

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

And the target number of 12 mediations per month was not a suggestion. It was a requirement. As the opinion previously explained, Wilkerson's supervisors "[Glenn] Sebesta and [Curtis] Smith have both explained that alternative dispute resolution specialists at the VA were expected to conduct 12 mediations per month, a target that was reasonable to meet." *Id.* In particular, Smith described conducting 12 mediations per month as a "critical element" of the alternative dispute resolution specialist role, and Sebesta emphasized to his employees the importance of hitting the 12-per-month requirement. R. 40, Exh. C, Smith Dep. at 64:15–21, 65:22–66:3.

Wilkerson counters that conducting 12 mediations per month was not a requirement because another supervisor, Tami Press, testified that the goal was reaching 144 mediations by the end of the year, rather than 12 mediations every single month. Pl.'s Mot. at 5. But that evidence does not help Wilkerson. Regardless of whether the requirement was 12 mediations per month or 144 mediations per year, Wilkerson fell far short. In 2018, she completed only 63 mediations, and in 2019, she completed 62. DSOF ¶¶ 15, 22; R. 40, Exh. E, VA Mem. at VA 2179; R. 40, Exh. F, 2019 Performance Eval at 01407. So Wilkerson conducted fewer than half of the required number of mediations and thus had serious productivity deficits. Press's testimony only further confirms Wilkerson's job performance issues. No reasonable jury could find otherwise, even giving Wilkerson the benefit of all reasonable inferences.

In addition to Wilkerson's failure to conduct the required number of mediations in the years leading up to her removal, she also failed to close out enough mediations. As the prior opinion detailed, "Wilkerson was required to close 95% of the mediation

cases that were assigned to her within 90 days of initial contact with the parties." MSJ Op. at 15. "But she closed out only 84% of her cases within that allotted time frame." *Id.* So this highlights yet another job performance issue that Wilkerson had. Wilkerson responds that as of June 1, 2020, she did not have any overdue mediations. Pl.'s Mot. at 6. That is true. But from October 2019 to March 2020, her closure rate was only 84%, and that is the time period that Sebesta identified in his proposed removal letter for Wilkerson. Proposed Removal Letter at 00008. So Sebesta's stated rationale for removing Wilkerson is supported by the evidence, even when viewed in Wilkerson's favor.

Next, Wilkerson argues that the fact that she was later rehired by the VA into a different role undercuts the claim that she had job performance issues. Pl.'s Mot. at 12. But as the government correctly identifies, Wilkerson's new role is at a different facility than her previous role, and she was hired by a different supervisor. R. 40, Exh. D, Wilkerson Dep. at 59:17–61:8. Plus, Wilkerson offers no deposition testimony from her new supervisor explaining the specific rationale behind hiring her. So there is no evidence showing that the new supervisor did not have any concerns about Wilkerson's previous performance issues or that her issues were not real. A reasonable jury would be left to speculate what relevance, if any, the rehiring had on the earlier decision to fire Wilkerson. Thus, Wilkerson's rehiring does not undermine the evidence that she had real job performance issues in her previous role, and it does not show that she was discriminated against.

6

## B. Comparators

Wilkerson next contends that she provided admissible evidence showing that her similarly situated coworkers were treated better than her. Pl.'s Br. at 13–14. But again, the Court considered and rejected this argument in its previous opinion. Wilkerson identified two comparator employees—Tyrone Wilkes and Shawn McConnell. *Id.* Starting with Wilkes, the prior opinion explained that "Wilkerson offers no admissible evidence to show that Wilkes had the same or similar productivity shortfalls as her and that Wilkes was not disciplined due to those shortfalls." MSJ Op. at 13–14. Wilkerson now points to deposition testimony from Smith that she claims supports Wilkes being a proper comparator. Pl.'s Br. at 14. Sure, that testimony suggests that Wilkes struggled to meet his mediation numbers. Smith Dep. at 107:7–109:22. But it also shows that after Smith talked to Wilkes about failing to meet his mediation numbers, Wilkes was transferred from being an alternative dispute resolution specialist to working in investigations. *Id.* So the evidence does not establish that Wilkes faced no discipline or consequences as a result of his performance.

With regard to McConnell, the previous opinion explained that "the admissible evidence does not show that McConnell had performance and conduct issues that were similar to Wilkerson's and that he faced no discipline for those issues. In fact, Wilkerson herself admitted that she did not know if McConnell received any discipline for his alleged infractions." MSJ Op. at 14. Thus, the Court already concluded that Wilkerson failed to offer evidence showing that McConnell was a proper

7

comparator. Wilkerson now argues that McConnell was not terminated despite "major conduct issues." Pl.'s Br. at 14. But the evidence that Wilkerson points to states that McConnell acted inappropriately in the workplace by insisting on interviewing a woman the day after she gave birth. R. 40, Exh. B, Sebesta Dep. at 99:16–100:7. There is no evidence suggesting that McConnell had productivity shortfalls or concerns like Wilkerson did. So McConnell did not engage in similar conduct to Wilkerson and thus cannot serve as a proper comparator to prove discrimination. *See Weber v. Univs. Rsch. Ass'n Inc.*, 621 F.3d 589, 594 (7th Cir. 2010) ("[A] plaintiff must show that the two employees dealt with the same supervisor, were subject to the same standards, *and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them*.") (cleaned up) (emphasis in original). No reasonable jury could conclude, even giving Wilkerson the benefit of the doubt, that similarly situated employees outside her protected class were treated better than her.

### C. Retaliation

Wilkerson also rehashes her argument that the timing of her removal was suspiciously close to the timing of her filing an informal grievance against her supervisor, Smith. Pl.'s Br. at 7–9. Wilkerson asserts that this timing proves that the VA retaliated against her for engaging in a protected activity. *Id.* Again, the Court already considered and rejected this argument.

In the summary judgment opinion, the Court noted that Sebesta "began the process of removing Wilkerson sometime after her April 6, 2020, mid-year

evaluation." MSJ Op. at 17. The opinion then went on to explain that "[t]he fact that Sebesta began working on removing Wilkerson after her final, poor performance review on April 6, 2020, aligns with the VA's stated nondiscriminatory rationale for removal: Wilkerson's low productivity." *Id.* Finally, the Court reasoned that "because Wilkerson's performance evaluation predates Sebesta learning of Wilkerson's complaint, … the evidence shows that Sebesta arrived at the conclusions on poor performance *before* he knew about her complaint." *Id.* (emphasis in original). That analysis remains correct. Even though Sebesta began the process of removing Wilkerson around the same time he learned about her informal grievance against Smith, that timeline is not suspicious and does not support retaliation. Sebesta's removal of Wilkerson began after Wilkerson's poor performance evaluation, and that evaluation came *before* Sebesta learned about the informal grievance. Sebesta Dep, at 80–86; R. 48-8, Sebesta Email at VA 2238. So the timeline of events definitively shows (and no reasonable jury could find otherwise) that Wilkerson's removal was motivated not by her filing a grievance, but rather by her poor performance evaluation. Wilkerson's retaliation claim fails.

## D. VA Policy

Finally, Wilkerson contends that in removing her, the VA "significantly departed from its own policies," which serves as evidence of pretext. Pl.'s Br. at 9. But the government responds that these policy-based arguments are new and were not presented at the summary judgment stage, so they should be disregarded. R. 67, Def.'s Resp. Br. at 3–4, 9. The government is right. "[I]t is well-settled that a motion

to reconsider is not the proper vehicle to raise new arguments that could and should have been raised prior to judgment." *Word Seed Church and Civ. Liberties for Urb. Believers v. Village of Homewood*, 43 F.4th 688, 691 (7th Cir. 2022). Here, Wilkerson could have, but did not, raise her arguments on the VA's failure to follow policy at the summary judgment stage. These arguments do not involve newly discovered evidence or any other feature that would have prevented Wilkerson from raising them earlier. So the Court must disregard them now.

But Wilkerson counters that her policy-based arguments are in fact not new. R. 68, Pl.'s Reply Br. at 2. She notes that she raised these arguments in her Rule 56.1 Statement of Additional Facts. *Id.* And Wilkerson says that mentioning relevant facts and arguments in her Rule 56.1 statement can defeat summary judgment, even if she neglected to mention those facts and arguments in her briefing. *Id.* at 3–4. In support of this position, Wilkerson cites *Sokja v. Bovis Lend Lease, Inc.*, 686 F.3d 394 (7th Cir. 2012), which she claims held that courts must consider facts set out in a party's Rule 56.1 statement, even if those facts are not at all mentioned in the party's summary judgment briefing. Pl.'s Reply Br. at 4. But that overstates *Sokja*'s holding.

In *Sokja*, the Seventh Circuit reversed the district court and vacated summary judgment, concluding that the plaintiff had created a genuine issue of material fact on whether the defendant had caused dangerous construction site conditions that led to the plaintiff's injury. *Sokja*, 686 F.3d at 395. The Seventh Circuit explained that the district court was wrong in finding that the plaintiff had failed to properly raise the argument about dangerous conditions at the summary judgment stage. *Id.* at

10

397–98. The Seventh Circuit pointed out that even though the plaintiff did not present the facts surrounding the dangerous conditions in his summary judgment response brief, the plaintiff *had* listed those facts in his Rule 56.1 statement. *Id.* at 396. And the court held that there "was no reason to grant summary judgment simply because Sokja included these facts in his Rule 56.1 statement rather than in his accompanying memorandum of law." *Id.* at 397.

It is crucial, however, that the Seventh Circuit also pointed out that the plaintiff *did* refer generally to the dangerous-conditions argument in his summary judgment response brief, when he stated that the defendant "shared responsibility for the dangerous conditions which led to Sokja's injuries." *Id.* at 396, 398. Thus, it was the combination of the reference to the argument in the plaintiff's brief and the more detailed presentation of the facts related to the argument in the Rule 56.1 statement that prompted the Seventh Circuit to conclude that Sokja had properly presented his dangerous-conditions argument to the district court.

Here, unlike in *Sokja*, Wilkerson made absolutely no reference in her summary judgment briefing to the VA failing to follow its policies. Wilkerson's discussion of the VA's alleged failure to follow its policies is entirely limited to her Rule 56.1 statement. So the Court had no hint from Wilkerson's briefing that she was making an argument about the VA's policies. It is not the district court's role to scour the Rule 56.1 statements for potential arguments—and, just as importantly, to then *develop* those arguments, both factually and as to how the facts relate to the governing law—for a party when that party neglects to even drop a hint to them in the briefing. *Sokja* does not

11

require that. So Wilkerson's argument about the VA's failure to follow its own policies is newly presented at the reconsideration stage. That is too late. The Court thus must disregard the argument. All of Wilkerson's arguments fail, and the motion to reconsider is denied.[4]

## IV. Conclusion

Wilkerson's motion for reconsideration, R. 64, is denied.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: August 13, 2025

---

[4]The summary judgment opinion held that the government's exhaustion argument failed because it did not provide any statutory or regulatory support for the position that Wilkerson neglected to exhaust her administrative remedies before filing suit. MSJ Op. at 10. But the government now argues that it forfeited its exhaustion argument only for the purposes of summary judgment, not for trial. Def.'s Resp. Br. at 11. The government notes that it could raise and succeed on exhaustion at trial by presenting the statutory and regulatory support that it failed to present earlier. *Id.* That is correct. Because Wilkerson did not cross-move for summary judgment on exhaustion, exhaustion remains a live issue if the case were to proceed to trial. And if the government were to adopt the position that the Court laid out in its summary judgment opinion, *see* MSJ Op. at 9–10, it would likely succeed.

Under 5 U.S.C. § 7703(b)(2),"[n]otwithstanding any other provision of law," Wilkerson needed to file for review with either the EEOC or the court within 30 days of getting a final decision from the MSPB. 5 U.S.C. § 7703(b)(2). She failed to do so. Instead, Wilkerson filed with the EEOC before filing with the MSPB and then never notified the EEOC after she received a final MSPB decision. EEO Decision Letter; Merit Systems Appeal Form. The 180-day waiting period to file suit laid out in both 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 starts only after the EEOC receives notification of a final MSPB decision. *See* EEO Decision Letter at 2, n.1. So that 180-day clock never started and never expired, which means that Wilkerson never became authorized to file suit in court. Thus, Wilkerson likely failed to exhaust her administrative remedies and would likely lose on that argument at trial.